(No. 53830

THE TOWN OF THE CITY OF PEORIA *et al.*, Appellees, v. EDWARD T. O'CONNOR, County Treasurer and *ex officio* County Collector, *et al.*, Appellants.

*Opinion filed May 22, 1981.*

John A. Barra and Michael M. Mihm, State's Attorneys, and John G. Sahn, Special Assistant State's Attorney, all of Peoria, for appellants.

David L. Thomas and Brian M. Nemenoff, Corporation Counsel, of Peoria, for appellee City of Peoria.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On November 16, 1976, the Peoria County Board adopted a resolution authorizing the county collector to print instructions on 1976 tax bills that taxpayers paying real estate tax installments by mail should direct such payments to the county collector, while taxpayers paying in person could make their payments to either their town-

ship collector or the county collector. The town of the city of Peoria and Mildred Arends, the township collector, thereafter filed a verified complaint in the circuit court of Peoria County against the County of Peoria and its county collector seeking a declaratory judgment that the resolution was contrary to law, and an injunction against the defendants prohibiting them from notifying taxpayers in the township that taxes could be paid to the county collector prior to the first day of September in any tax-collection year.

In its April 22, 1977, order granting a preliminary injunction, the court found that for at least the preceding 20 years real estate tax bills for the plaintiff township had instructed taxpayers to pay the tax at the township collector's office prior to September 1 and at the county collector's office thereafter. The court further found the proposed taxpayer instructions were contrary to law and enjoined the defendant county and county collector from notifying the taxpayers of the plaintiff township that they might or should pay any real estate tax to any officer other than the township collector prior to September 1. The order further required the county collector to include with the tax bills a separate sheet directing pre-September 1 payments to be made at the township collector's office.

The county and county collector thereafter filed an answer and five-count counterclaim against the town and the township collector. The counterclaim alleged that the township and town collector did not possess authority to invest collected taxes; that they did not have authority to retain the interest earned upon the investment of such collected taxes; that the county collector has sole authority to invest proceeds of taxes paid under protest; and that the retention by the town of interest on the collected taxes constitutes a fee for services which is proscribed by the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 9(a)). The parties thereafter stipulated that the town

collector invested collected taxes and paid the interest earned therefrom to the town of the city of Peoria.

On April 12, 1979, the circuit court ordered a permanent injunction restraining defendants from suggesting to taxpayers in the plaintiff township that real estate taxes could, prior to September 1, be paid elsewhere than at the office of plaintiff township collector. The court further held that the township collector had the authority to invest collected taxes in interest-bearing accounts, but that the township had no authority to retain the interest earned upon such investment and directed payment of such interest to the county collector for deposit in the county corporate fund. Plaintiffs and defendants appealed and cross-appealed from that order.

The appellate court affirmed in part and reversed in part (85 Ill. App. 3d 427), holding that the township collector had exclusive authority to collect taxes prior to September 1, had inherent authority under the Revenue Act of 1939 to invest the collected taxes, and was entitled to retain the earned interest for the township. We granted defendants' petition for leave to appeal.

The issues before us are (1) whether the town collector for the town of the city of Peoria has exclusive authority to collect from residents annual real estate taxes prior to September 1, (2) whether tax funds collected by that office may be invested by it, and (3) whether such investment income may be retained by the township collector and used for township purposes.

The boundaries of the city of Peoria and the town of the city of Peoria are coterminous, and the city treasurer serves as town collector. (See Ill. Rev. Stat. 1975, ch. 139, pars. 127, 131.) This fact is relevant here only as it affects the obligation of the township collector in making final settlement with the county collector. (See Ill. Rev. Stat. 1975, ch. 120, par. 680.) County treasurers are by statute *ex officio* county collectors in their counties. Ill. Rev.

Stat. 1975, ch. 120, par. 657.

The tax-collection process commences with the delivery of the tax books to the collecting officials. Section 172 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 653) provides in part:

> "Sec. 172. The respective county clerks shall deliver the books for the collection of taxes to the county or town collectors on or before the thirty-first day of December annually."

Thereafter, the county clerk must certify to the county collector the amount of taxes to be collected and names of the town collectors:

> "Sec. 173. On the delivery of the tax books to the town collectors, the clerk shall make a certified statement setting forth the name of each town collector, the amount of taxes to be collected and paid over for each purpose for which the tax is levied in each of the several taxing districts and furnish the same to the county collector." (Ill. Rev. Stat. 1975, ch. 120, par. 654.)

While the statute still speaks of "books," we are told by the parties here that Peoria County tax assessment and collection information has been computerized in recent years, and no "books" are presently utilized. The information is stored, and the computer equipment operated and maintained, by the county. The township collector's office is connected with the county system by a computer terminal, and the work of billing and receipting is now largely computerized.

Section 190 (Ill. Rev. Stat. 1975, ch. 120, par. 671) imposes upon the county collector the duty to prepare and mail the tax bills. It states:

> "Sec. 190. *Every town collector, and every county collector, in cases where there is no town collector,* upon receiving the tax book or tax books, shall proceed to collect the taxes mentioned herein. It shall be the duty of every county collector to prepare tax receipts in triplicate for personal property taxes and each installment of

real property taxes assessed, which shall be filled out in accordance with the requirements of Section 196 of this Act, one copy of which shall be mailed by such collector at least 30 days prior to the date upon which unpaid real estate taxes become delinquent, to the owner of the property taxed, or to the person in whose name such property is taxed. Another copy shall be used by the collector in receipting for the tax paid, and the remaining copy thereof shall be retained by such collector. ***" (Emphasis added.)

The relevant statutory provisions relating to disbursement of the collected taxes are contained in sections 199 and 200:

"Sec. 199. Town collectors shall return the tax books and make final settlement for the amount of taxes placed in their hands for collection, within sixty days after receiving the tax books: *** Provided further that town collectors in townships organized under the provisions of 'An Act to authorize county boards in counties under township organization, to organize certain territory situated therein, as a town, and to provide for annexation of territory to and the disconnecting of territory from said town', approved May 23, 1877, as amended, shall make a partial settlement with the county collector of all taxes collected at the expiration of sixty days from the day the tax books are received by such town collectors, but shall retain the tax books until on or before the first day of September at which time they shall make final settlement for the amount of taxes placed in their hands for collection together with the amount of interest and penalties which may have accrued thereon, which interest and penalties such town collector is hereby directed to collect and return the tax books to the county collector: ***." Ill. Rev. Stat. 1975, ch. 120, par. 680.

"Sec. 200. At the time of making return to the county collector, each town collector in counties under township organization shall make out and deliver to the county collector a detailed statement, in writing, of the amount of taxes paid under protest, the amount of taxes he has been unable to collect on real estate and from persons charged with personal property taxes, ***. The town col-

lector shall add up the delinquent taxes in said statement, and make a summary thereof, setting forth the aggregate amount of each kind of tax and the total delinquent, in the same manner as in his warrant, and shall make oath that said statement is true and correct. At the time of making such final settlement the town collectors shall pay over to the county collector all taxes paid to them under protest." (Ill. Rev. Stat. 1975, ch. 120, par. 681.)

Also relevant to our consideration is section 207, which provides:

"Sec. 207. County collectors shall have the same powers and may proceed in the same manner, for the collection of any tax on real or personal property, as town collectors; and if in any town the office of town collector is or shall become vacant, and such vacancy shall not be filled on or before the first day of May next following such vacancy, the county clerk shall deliver all such collectors' books to the county collector of such county, having annexed to each of such books a warrant under the hand and official seal of the county clerk, commanding such county collector to collect from the several persons named in such books, the several sums of taxes therein charged opposite their respective names, ***. It shall thereupon be the duty of such county collector to collect and pay over all taxes, assessments and other charges shown in such books, and to do all acts required of him by law in like manner as if such taxes, assessments and other charges had been duly returned delinquent by a town collector. ***" (Ill. Rev. Stat. 1975, ch. 120, par. 688.)

Also to be noted is section 208, which states:

"Sec. 208. The power and duty to levy and collect any tax due and unpaid, shall continue in and devolve upon the county collector and his successors in office, after his return and final settlement until the tax is paid; and the warrant attached to the collector's book shall continue in force and confer authority upon the collector to whom the same was issued, and upon his successors in office, to collect any tax due and uncollected thereon, although such books may have been returned, or the tax carried forward into any other book." Ill. Rev. Stat. 1975, ch. 120, par. 689.

We are to be guided in our resolution of the issues by the legislative intent as evidenced by the statutory provisions. As this court stated in *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194:

> "The language of the statutes must be given its plain and ordinary meaning. 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.)"

We agree with plaintiffs and the trial and appellate courts that the statutory collection scheme vests exclusive authority in the township to collect taxes prior to the September 1 final settlement and that there is no authority for the county's proposed dual-collection system. While there are some minor inconsistencies in the various provisions, and separate sections if considered alone might be thought ambiguous, when the Revenue Act is viewed as a whole the legislative intent seems clear. There is no equivocation in the language of section 190 that "[e]very town collector, and every county collector, in cases where there is no town collector, upon receiving the tax book or tax books, shall proceed to collect the taxes mentioned herein." (Ill. Rev. Stat. 1975, ch. 120, par. 671.) Plainly, in our opinion, county collectors collect only where there is no town collector, or after the town collector's Septem-

ber 1 final settlement required by section 199. Reinforcement for our conclusion, if it were thought necessary, is also to be found in the detailed requirements of sections 201 through 206 (Ill. Rev. Stat. 1975, ch. 120, pars. 682 through 687) relating to the town collector's final settlement and discharge and the authority conferred upon the county collector by section 207 (Ill. Rev. Stat. 1975, ch. 120, par. 688) to act in the event a vacancy exists in the town collector's office. Also entirely consistent with our conclusion is the requirement of section 173 (Ill. Rev. Stat. 1975, ch. 120, par. 654) that, after he turns the tax books over to the town collectors, the county clerk certify to the county collector the names of those to whom he delivered the books and the amounts of taxes to be collected.

We accordingly hold it to be the clear intent of the legislature that the township collector shall have exclusive authority to collect resident real estate taxes prior to the 1st of September.

The issue regarding the authority of the town collector to invest collected tax monies became moot as of July 1, 1980, the effective date of Public Act 81—1181. Section 3 of that act provides: "Any treasurer or other custodian of public funds may deposit such funds in a State or national bank in this State. When such deposits become collected funds and are not needed for immediate disbursement, they *shall* be invested within 2 working days at prevailing rates or better." (Emphasis added.) (Ill. Rev. Stat., 1979 Supp., ch. 102, par. 34.) The township collector is, of course, a custodian of public funds as to the collected taxes which have not been turned over to the county collector, and thus has not only the authority, but also the duty, to deposit such funds in revenue-producing fashion for the public benefit. This legislation represents another step in the process of eliminating the practice of placing public funds in non-interest-bearing accounts, a formerly

existing and troublesome practice.

Prior to July 1, 1980, however, nothing in the Revenue Act of 1939 explicitly directed or precluded the investment of collected taxes by the township collector, and the defendants urge that in the absence of explicit direction no investment can be made. To the contrary, we believe the various statutory provisions relating to township collectors, or to public officials generally, manifest an intent that the authority to invest collected tax monies exists. Section 172 of the Revenue Act provides that the board of town auditors, when requested by the township collector, "shall designate a bank or banks or other depository in which the funds and moneys received by the town collector, by virtue of his office, may be deposited." (Ill. Rev. Stat. 1975, ch. 120, par. 673.) The township collector, as a custodian of public funds, also seems to come within the purview of "An Act in relation to the deposit of public funds," section 1 of which states:

> "Any treasurer or other custodian of public funds may deposit such funds in a State or national bank in this State ***." (Ill. Rev. Stat. 1975, ch. 102, par. 34.)

As the appellate court noted as early as 1939, "It also may be conceded as in accord with common experience that the banks would credit these accounts with interest ***." *State Bank & Trust Co. v. Commercial Trust & Savings Bank* (1939), 300 Ill. App. 435, 441 (action against sureties of township collector who retained interest earned on deposit of public funds).

Also applicable to township collectors are the provisions of sections 1 and 2 of "An Act relating to certain investments of public funds by public agencies" quoted later in this opinion. (Ill. Rev. Stat. 1975, ch. 85, pars. 901, 902.) Section 1 specifically includes townships, and town collectors have been recognized as township officers. (*Osborn v. City of Alton* (1954), 4 Ill. 2d 605; *People v. Holten* (1919), 287 Ill. 225.) Similarly, the Attorney

General has expressed the opinion that the State Treasurer, as *ex officio* custodian of Toll Highway Commission Bond funds, is authorized to invest them in accordance with the statutory authority granted by sections 1 and 2. 1971 Ill. Att'y Gen. Op. 1.

In view of the explicit legislative intent that public funds should be deposited in income-producing fashion, and given the express provisions whereby town collectors, as well as other fund custodians, may protect themselves from liability for the deposit of public funds in specific institutions, we believe a holding that town collectors were in 1976 without authority to deposit collected taxes in interest-earning accounts would be an unwarrantedly restrictive interpretation of the legislative purpose.

The final issue is whether the investment income may be used for the benefit of the township. Defendants urge that it must be paid to the county collector for deposit in the county corporate fund as is the interest earned on similar investments by the county collector (Ill. Rev. Stat. 1975, ch. 120, par. 673a). Plaintiffs suggest that, if the township cannot retain such income, it should be distributed *pro rata* to the taxing bodies.

Section 1 of "An Act relating to certain investments of public funds by public agencies" (Ill. Rev. Stat. 1975, ch. 85, pars. 901 through 905) provides:

> "Sec. 1. The words 'public funds', *** mean *** funds of any kind or character belonging to or in the custody of any public agency.
>
> The words 'public agency', as used in this Act, mean *** townships, *** and all other political corporations or subdivisions of the State of Illinois, now or hereafter created, whether herein specifically mentioned or not." (Ill. Rev. Stat. 1975, ch. 85, par. 901.)

Section 2 states:

> "Sec. 2. Any public agency may invest any public funds in [specified ways] ***.
>
> ***
>
> *** All earnings accruing on any investments or de-

posits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made \*\*\*." (Ill. Rev. Stat. 1975, ch. 85, par. 902.)

The township is not the public agency by or for which the investments were made. The taxes received by the township collector result from assessments and levies by the county, the township, and other political subdivisions. The invested funds belong to those taxing bodies, and the township collector's authority is only to collect and hold those funds until the time disbursement is required. His authority to invest these funds by virtue of being their custodian does not affect their ownership, for he is simply acting in a statutorily created fiduciary or agency capacity. The township may not keep the interest earned on these funds simply because a township officer collected and invested them on behalf of other public agencies. The clear language of section 2 indicates that this income should be credited to the public agencies for which the investments were made.

The statute does not expressly direct the manner in which disbursement of this income to the taxing bodies shall be made. The statutory scheme does direct that the tax monies be turned over to the county collector at partial and final settlement times for ultimate distribution to the taxing bodies. There would appear no reason to conclude that the General Assembly intended the income on the tax monies to be treated any differently. Accordingly, the county collector will distribute that income to the taxing bodies on a *pro rata* basis.

The judgment of the appellate court is affirmed in part and reversed in part. The judgment of the circuit court is affirmed as modified herein.

*Appellate court affirmed in part and reversed in part; circuit court affirmed as modified.*