THE BOARD OF COMMISSIONERS OF THE WOOD DALE PUBLIC
LIBRARY DISTRICT *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF
DU PAGE *et al.*, Defendants-Appellees.

Second District    No. 81-731

Opinion filed June 30, 1982.

Barry L. Moss, of Moss and Bloomberg, Ltd., of Bolingbrook, for appellants.

James R. Schirott, of Samuelson, Knickerbocker and Schirott, of Des Plaines, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Who is entitled to the interest earned on tax moneys collected by the county treasurer acting as *ex officio* county collector prior to distribution of the principal to the units of local government levying the taxes is the question before us.

The action was brought by the Wood Dale Public Library District and its commissioners on its own relation and purportedly on behalf of all units of local government in Du Page County (District). The complaint alleged that the county had retained interest earned on collected tax money in violation of Illinois statutory and constitutional law. The County of Du Page, its commissioners and its treasurer and *ex officio* county collector (County) moved to dismiss the complaint for failure to state a cause of action, and the court granted the motion.

The District appeals, arguing that the distribution of the earnings at issue is controlled by the act relating to investments of public agencies (Ill. Rev. Stat. 1979, ch. 85, pars. 901, 902) (Public Funds Act), requiring the county to distribute the earnings *pro rata* to the units of local government. It bases its argument on principles of statutory construction and on its contention that allowing the county to retain the earnings on funds belonging to other units of local government under the act relating to county treasurers (Ill. Rev. Stat. 1979, ch. 36, par. 22.1) (Treasurers Act) would violate article VII, section 9(a), of the 1970 Illinois Constitution, the equal protection clauses of the United States and Illinois constitutions, and the principle of uniformity of taxation.

The Treasurers Act provides as pertinent:

"The term 'county moneys' shall include all moneys to whomsoever belonging, received by or in possession or control of the incumbent of the office of county treasurer when acting as such or in any other official capacity incident to his incumbency of the office of county treasurer." Ill. Rev. Stat. 1979, ch. 36, par. 17.

"All earnings accruing on any investments or deposits made by the County Treasurer whether acting as such or as County Collector, of county monies as in this Act is defined, shall be credited to and paid into the County Treasury for the benefit of the county corporate fund to be used for county purposes, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund." Ill. Rev. Stat. 1979, ch. 36, par. 22.1.

The Public Funds Act provides as pertinent:

"The words 'public funds', as used in this Act, mean current operating funds, special funds, interest and sinking funds, and

funds of any kind or character belonging to or in the custody of any public agency.

The words 'public agency', as used in this Act, mean the State of Illinois, the various counties, townships, cities, towns, villages, school districts, special road districts, public water supply districts, fire protection districts, drainage districts, levee districts, sewer districts, housing authorities, and all other political corporations or subdivisions of the State of Illinois, now or hereafter created, whether herein specifically mentioned or not." Ill. Rev. Stat. 1979, ch. 85, par. 901.

"* * * All earnings accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund." Ill. Rev. Stat. 1979, ch. 85, par. 902.

The District argues that the Illinois Supreme Court, in *Town of City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, has decided that the Public Funds Act is applicable to investments of tax funds held by a collecting officer before distribution, and that any income from these funds should be credited to the public agency for which the investments were made. In *O'Connor*, the court held that the township collector's role as collector and custodian of tax funds belonging to other taxing units did not entitle the township to the income from its investment of these funds. (85 Ill. 2d 195, 207.) However, *O'Connor* has not addressed the precise issue before us since the township was not investing funds according to the Treasurers Act and thus did not rely on a grant of authority from a statute apparently in conflict with the Public Funds Act.

Both acts appear to be in *pari materia* as they purport to deal with the same subject matter (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43), but it is difficult to reconcile them by familiar rules of statutory construction. The basic rule that the legislative intent should be given effect, primarily from the language of the statute (see, *e.g., Town of City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 203) is of limited aid in determining which act applies. The County argues that section 2 of the Public Funds Act contains the proviso "except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund" (Ill. Rev. Stat. 1979, ch. 85, par. 902), and contends that section 6.1 of the Treasurers Act (Ill. Rev. Stat. 1979, ch. 36, par. 22.1) is such a provision. However, the use of the phrase "particular fund" elsewhere in the two statutes tends to support the District's argument that the exception is basically one of "proper accounting"

designed to insure that interest on principal from a special fund as opposed to the general fund of a public agency goes to the special fund, where mandated. Sections 3 and 4 of the Public Funds Act refer to "particular fund[s]" of a public agency, apparently to distinguish such funds from general agency funds. (Ill. Rev. Stat. 1979, ch. 85, pars. 903, 904.) It should also be noted that section 6.1 of the Treasurers Act has a similar exception clause to that of the Public Funds Act. Either interpretation appears reasonable; the exception clause in each statute could be read simply as providing that funds be invested as provided therein in the absence of a more specific statutory provision elsewhere. This interpretation is strengthened by the fact that each exception clause uses the phrase "particular fund" rather than "special fund."

It is also a general rule that specific statutory provisions control over more general ones (see, *e.g., Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 403). But which is more specific? The District argues that the Treasurers Act is meant to apply only to county funds and thus that the Public Funds Act which applies to tax money belonging to other units is the more specific; the County argues on the basis of the language of the Treasurers Act that that act deals only with those moneys held specifically by the county treasurer while acting as county collector, whereas the Public Funds Act deals with the funds of public agencies generally. To reconcile these arguments requires us to address the District's premise, that the Treasurers Act applies only to the county's own funds and that other funds collected are governed by the Public Funds Act.

■■ In essence, the District is arguing that the Public Funds Act repealed the applicable portion of the Treasurers Act by implication insofar as the Treasurers Act requires income from noncounty tax funds to be credited to the county treasury. Repeal by implication, however, is not favored and "the clearest case possible must be made before inference may properly be drawn that a later act, by implication, repeals an earlier one." (*People ex rel. Myers v. Pennsylvania R.R. Co.* (1960), 19 Ill. 2d 122, 129. See also *City of Champaign v. City of Champaign Township* (1959), 16 Ill. 2d 58, 67-68.) We note in this connection that the pertinent provision of the Treasurers Act was added in 1967, whereas the applicable provision of the Public Funds Act was enacted in 1975, which was subsequent to the 1970 Constitution, article VII, section 9(a).

■■ The intention of the legislature drawn from the language used in the two acts appears unclear, tested by the referenced rules of statutory construction. However, there is a further rule of statutory construction that where "two legislative schemes do not seem totally compatible, they can, and should, be given an interpretation which imparts meaning and constitutionality to each enactment." (*Arnolt v. City of Highland Park*

(1972), 52 Ill. 2d 27, 31-32.) Also, "[w]here it is contended that a section of a statute is in contravention of the constitution and it is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, it is the duty of the court * * * to so construe the section as to uphold its constitutionality and validity * * * and if the construction is doubtful the doubt will be resolved in favor of the validity of the law." *People ex rel. Mathews v. Board of Education* (1932), 349 Ill. 390, 400.

Here, the District contends that the County's retention of earnings from plaintiffs' funds in the County's custody violates article VII, section 9(a), of the Illinois Constitution which directs:

> "Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes." Ill. Const. 1970, art. VII, sec. 9(a).

Plaintiffs maintain that by withholding interest from local taxing districts and "diverting" such interest to the county treasury instead, the county is, in effect, charging local taxing districts a fee based on funds collected and on the levy or extension of taxes, in violation of article VII, section 9(a). The collector answers that the interest is a "perquisite" or an "emolument" of the office and that article VII, section 9(a), prevents only "fees" from being collected. The argument that "perquisites" and "emoluments" of the office are not prohibited by the 1970 Constitution, however, is not fortified by the cases that the county cites, *Hughes v. People* (1876), 82 Ill. 78, and *County of Lake v. Westerfield* (1916), 273 Ill. 124. *Hughes* stands for the proposition that moneys paid by a bank to a sheriff in return for his depositing funds of his office is a perquisite or emolument which may not personally be retained in addition to his fixed compensation; *Westerfield*, that a county treasurer as county collector is not personally entitled to interest earned on the funds collected, again in addition to his fixed compensation.

There is nothing in these two opinions to indicate that the courts have used the terms "fees," "perquisites," and "emoluments" as precise terms of art, or that simply because interest on invested funds might be considered a "perquisite or emolument" of the county collector's office, it cannot also be considered a proscribed "fee" as that word is used in article VII, section 9(a), of the Illinois Constitution. We believe that whether the retention of interest that is challenged here is a prohibited fee according to article VII, section 9(a), should hinge on a consideration of the policies intended to be served by that provision rather than on artificial semantic distinctions based on cases decided long before its adoption.

The Illinois Supreme Court has construed article VII, section 9(a), broadly. (*City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516.) In *Bosworth*, the court struck down a portion of the Fees and Salaries Act (Ill. Rev. Stat., 1974 Supp., ch. 53, par. 39a), which allowed counties to bill each taxing district within the county for its proportionate share of the actual costs incurred by a county in extending and collecting taxes. Relying in part on the constitutional proceedings (4 Record of Proceedings, Sixth Illinois Constitutional Convention 3404-05 (hereinafter cited as Proceedings); 64 Ill. 2d 516, 524-25), the court found that the intention was "to preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes." (64 Ill. 2d 516, 524.) It noted that "the collection of taxes by county officers is a county function which should be supported by county taxes." 64 Ill. 2d 516, 531.

In *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, the Illinois Supreme Court invalidated a provision of the Inheritance Transfer Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 394) which authorized the county treasurer to retain and pay into the treasury 4% of inheritance taxes collected. The court reviewed the historical background against which the reimbursement was originally made directly to the county treasurer for his services, and later when he became salaried, to require that he pay the percentage of the collected taxes into the county treasury. The court noted that the purpose of the change "was to give to the counties and not the State * * * the fees earned by the county treasurer in the collection of the taxes * * *." (65 Ill. 2d 325, 328.) See also *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 27, where the supreme court concluded that "the collection by one governmental entity of a tax due to a different entity has been regarded as a fee imposed by the former, rather than as a distribution of tax revenues after they have been collected," and invalidated the county's retention of net proceeds from the sale of State revenue stamps.

Plaintiffs argue that the withholding of income from taxes which they have levied is in essence the charging of a fee based upon funds disbursed or collected and upon the levy or extension of taxes. While the county is retaining interest from the investment of collected tax funds rather than taking a percentage of those funds directly, we also do not perceive a rational difference. By retaining the interest earned on investment of another taxing body's funds, the county is depriving that taxing body of the time value of the money that the county has collected for it; this enrichment of the county treasury arises solely from the county treasurer's statutory role as collector and custodian of local taxing district's revenues. That the county is retaining interest rather than principal seems irrelevant; in either case, the county, by virtue of the statutory collection procedure,

is retaining a sum of money that would otherwise be available to local taxing districts.

A major difference between the charges struck down in *Bosworth, Goldstein* and *Saltiel* on the one hand, and the retention of interest at issue here on the other, is that in each of the former cases it was apparent from either the face of the act in question or from its legislative history that the purpose of the legislature in adopting the act was to recompense one unit of government for the expenses it incurred in collecting taxes due another unit of government. Such a legislative purpose is not apparent with regard to the interest-retention provisions of the Treasurers Act. The District cites *People ex rel. Abbe v. Nash* (1936), 364 Ill. 224, in support of its claim of such a purpose, but *Nash* did not deal with section 6.1 of the Treasurers Act; rather, it was concerned with various provisions of the Revenue Act involving collection of penalties and interest from delinquent taxpayers. Nevertheless we cannot agree with the argument of the county that the retention of interest is not a charge for the purpose of collecting taxes, but simply part of an overall scheme for the investment of moneys in the custody of the county treasurer.

To be a "fee" based upon funds collected or upon the levy or extension of taxes, it would seem sufficient that a charge is derived from the tax collection and disbursement process; the interest "charge" in this case is clearly tied to the collection process, as the interest accrues to the county by virtue of the tax collection process as it is presently structured. That a charge may be a "fee" without being directly tied to compensation is suggested by a reading of article VIII, section 9(a), itself; the first sentence specifies that compensation for the expenses of local government shall not be paid from fees collected; the second clause provides, however, that fees may still be charged, subject to the limitations of the last sentence, which requires that they not be based upon funds disbursed nor collected nor upon the levy or extension of the taxes. The logical inference is that a county's charge to another unit of government may be a fee even though not for the purpose of compensating the county for the expenses of tax collection, and, further, that insofar as the retention of interest in this case is in effect a charge upon units of local government that it is proscribed by the last sentence of article VII, section 9(a). It should be noted that the aim of the County Treasurers Act appears to have been the statutory prohibition of the practice whereby the county treasurers enriched themselves by investing funds in their custody and retaining the interest personally. Regardless of the original purpose of the statutory provision for retention of interest, it is functionally a charge based upon the levy and disbursement of taxes. See *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 26-27.

It is clear from the constitutional debates that the evils that article VII, section 9(a) was designed to correct are the danger of deceiving the public as to county finances and the perceived inequity of the "skim-off" for those paying higher taxes.[1] This would appear to be present in the interest retention scheme of the Treasurers Act. Retaining a percentage of tax funds in interest is no different in effect from taking a portion of the principal. The fact that the county has some control over the time of distribution of the collected funds and gains by delay in distribution also illustrates the danger which the constitutional change appears designed to prevent.

It also appears that the tax collection and distribution system mandated by section 6.1 of the Treasurers Act, if it applies to noncounty funds violates the equal protection clauses of the Federal and Illinois constitutions, by allowing counties to receive interest on their collected tax moneys while denying this benefit to other units of local government. The counties are allowed to earn interest on county taxes when they have been received by the county collector; yet under terms of section 6.1 every other unit of local government does not receive any interest on funds in the hands of the county collector. In addition, the taxes for local government units in some areas may be collected by the township collector, and pursuant to *Town of City of Peoria* interest must be returned to the unit involved; in another township there may be circumstances when the county collector collects the taxes for the local unit and under the collector's argument as to paragraph 6.1 interest could be retained by the county.

---

[1] The remarks of Delegate Zeglis primarily responsible for article VII, section 9(a), include:

"However, the most valid reason for abolishing this skim-off by the county for its corporate fund is the inequitable nature of this hidden—what I call surtax. ° ° ° I will give you an example of why this is a surtax, which is very unfair. ° ° ° A homeowner in a rural area with a $10,000 home has a $300 tax bill. His taxes are low because he is taxed only by the county, his local school district, and the township. From his $300 taxes, 3 percent or $9 is taken by the county treasurer-collector as fees, and given to the county government for corporate purposes. ° ° ° For his $9 that this rural taxpayer pays—this $9—he receives very often a good county road, snow removal, police protection by the sheriff, the county zoning officer and building permits, the benefit of the county health department and many other services, ° ° °.

The other resident lives in a city in the county. His tax bill on his $10,000 house is $600, and the county treasurer takes $18 from his tax bill for county purposes. The reason his tax bill is $600 is because he pays his county tax, city tax, school and park district tax, airport authority tax, mosquito abatement tax, and the township and transit authority tax. Thus he indirectly pays the county $18 for county services, plus his ordinary county tax; and he receives none of the services that the rural resident receives, for the city provides his police protection, his road, zoning, building officers, and health officers. This would be an unfair tax without this example of discrepancy of services in these two areas as they—as why would a person with a high tax rate pay more county taxes than those in a low-tax area if the valuations are identical?" 4 Proceedings 3405; *City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 525.

■■ The legislative classification is valid if it is based on a real and substantial difference having a rational relation to the subject of the particular legislation. (*Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 511.) A court will not interfere with the judgment of the legislature unless the classification is clearly arbitrary and unreasonable, with all reasonable doubts to be resolved in favor of upholding the validity of the challenged law. *McRoberts v. Adams* (1975), 60 Ill. 2d 458, 463.

■■ It is difficult to conceive of a legitimate basis for the challenged classification. Although compensating counties for the cost of collecting taxes due other units of local government would appear to be a rational basis for the classification, the fundamental policy of article VII, section 9(a), against such compensation appears to weigh decisively against upholding the unequal treatment of counties and other local governmental units on this basis. The challenged classification therefore seems to be no more than an arbitrary and unjustified preference for counties as against other units of local government. Arbitrarily granting one unit of government a privilege denied to other units is constitutionally impermissible. (*Harvey v. Clyde Park District* (1965), 32 Ill. 2d 60, 64-67; *Hutchings v. Kraject* (1966), 34 Ill. 2d 379, 382. See also *Jenkins v. State* (1975), 85 Wash. 2d 883, 540 P.2d 1363.) The plaintiffs clearly have standing to make this argument here. *Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 56.

The District's argument that the Treasurers Act violates the principles of uniformity of taxation does not appear well founded. (See *Board of Education v. Clark* (1972), 51 Ill. 2d 323, 328.) However, in light of our resolution of other issues above, we need not reach this question.

■■ We thus conclude that retention of interest on the District's tax revenues by the county pursuant to the Treasurers Act violates article VII, section 9(a), of the Illinois Constitution and that this conclusion militates in favor of the statutory interpretation that section 6.1 of the Treasurers Act is not intended to include the interest earned on funds owned by other units of local government. If this practice is permitted the Treasurers Act would be unconstitutional. It follows that under section 2 of the Public Funds Act the District is entitled to the claimed interest moneys.

The judgment of the trial court dismissing the complaint for failure to state a cause of action is therefore reversed and the cause remanded with directions to vacate the prior order and to thereupon proceed in accordance with this opinion.

Reversed and remanded with directions.

NASH and HOPF, JJ., concur.