JORDAN KAISER *et al.*, Plaintiffs and Counterdefendants-Appellees, v. MEPC AMERICAN PROPERTIES, INC., Defendant and Counterplaintiff-Appellant.

First District (5th Division)   No. 87—1094

Opinion filed December 18, 1987.

980

Freeborn & Peters, of Chicago (David C. Gustman and Elizabeth D. Sharp, of counsel), for appellants.

Eugene L. Shepp and Judith S. Sherwin, both of Shepp & Sherwin, of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order entered on a petition for attorney fees in an action to enforce a commercial lease agreement.

The facts relevant to the issues presented are neither complex nor substantially disputed. The lessees, Jordan Kaiser and Walter Kaiser, filed an action against the lessor, MEPC American Properties, Inc. (MEPC), seeking a declaration of the rights and obligations of the parties under a lease agreement; and MEPC thereafter filed a breach of contract counterclaim against the Kaisers for amounts allegedly due it thereunder. MEPC also sought costs and attorney fees from the Kaisers pursuant to section 1401 of the agreement, which provided:

"Lessee shall pay all costs and expenses, including attorneys' fees which may be incurred by or imposed on Lessor either in enforcing this lease or in any litigation to which Lessor, without fault on its part, may be made a party."

Summary judgment was entered in favor of MEPC on July 28, 1986, and the cause was continued for a separate hearing on attorney fees.

In their petition, MEPC requested fees totalling $53,172.35 and costs of $1,938.39. In support thereof, it submitted the affidavits of (1) Peter Hess of Hess, Kaplan & McDowell, Ltd., the law firm originally retained to represent it in this litigation, and (2) Margaret Garvey, a partner in the law firm of Freeborn & Peters, which was retained following the withdrawal of Hess, Kaplan & McDowell from the case.

In his affidavit, Peter Hess set forth his and his partners' educational backgrounds and stated that prior to July 1982, his firm had represented MEPC in various real estate transactions; that it represented MEPC in this litigation from July 1982 until June 1985; that the standard hourly rates charged to its clients, including MEPC, were $135 per hour between 1982 and 1984 and $150 per hour thereafter; that the exhibits attached to the affidavit were (a) copies of bills and daily time reports sent to and paid by MEPC, and (b) a list of the services performed and the time allotted to each; that Exhibit B was prepared from time records maintained in the ordinary course of business and available for inspection; and that the total amount of fees and costs billed to and paid by MEPC were $23,943.75 and $104.20, respectively.

Margaret Garvey likewise detailed the qualifications of the attorneys in her firm who were involved in this litigation and attached a chronological list, compiled from daily time records maintained in the regular course of business containing a description of the services performed, a notation indicating by whom they were performed, the amount of time spent thereon and the hourly rate charged for each of the attorneys, paralegals and docket clerks who had worked on the case. The final total amount requested for those services was $28,228.60, plus costs of $1,834.19.

In their responsive memorandum, the Kaisers objected to the award of any of the fees requested by MEPC for services performed by Hess, Kaplan & McDowell. In support thereof, they submitted a second affidavit given by Peter Hess on August 27, 1986, following their request for production of the contemporaneous time records which, according to his first affidavit, had been relied upon in preparing the summary of charges attached thereto. In it, Hess stated that those records no longer existed; that following entry of the daily time logs of the individual attorneys into a "client control sheet" the time slips were destroyed; and that excepting the exhibits attached to his original affidavit, there were no records relating to the fees for which MEPC was charged in connection with this litigation.

The Kaisers' memorandum also urged the trial court to disallow

(a) two-thirds of the legal fees requested by Freeborn and Peters and (b) all costs except those for the taking and transcription of their depositions. As to these amounts, they argued that the fees were excessive and unreasonable because the detailed time records attached to Garvey's affidavit revealed numerous instances of duplication of services and excessive and unnecessary amounts of time spent by several attorneys on the same matters, and that the costs were not properly chargeable to them because they were of the type normally included in office overhead and/or were not reasonably and necessarily required by the litigation.

At the conclusion of the hearing on November 5, 1986, the trial court denied MEPC's request for the fees it paid to Hess, Kaplan & McDowell and, after a second hearing, on December 6, 1986, the court awarded MEPC $13,729 for the fees of Freeborn & Peters and $351.60 for the charges of the court reporter who took the Kaisers' depositions.

OPINION

■■■ Provisions in contracts for awards of attorney fees are an exception to the general rule that the unsuccessful litigation in a civil action is not responsible for the payment of the opponent's fees. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488; *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 478 N.E.2d 860; *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 465 N.E.2d 139.) In all cases, however, only those fees which are reasonable will be allowed (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890), the determination of which is left to the sound discretion of the trial court (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Board of Education v. County of Lake* (1987), 156 Ill. App. 3d 1064, 509 N.E.2d 1088). It is also well settled that the party seeking the fees, whether for himself or on behalf of a client (*First National Bank v. Barclay* (1982), 111 Ill. App. 3d 162, 443 N.E.2d 780), always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Heckman v. Hospital Service Corp.* (1982), 104 Ill. App. 3d 728, 432 N.E.2d 891; *Ealy v. Peddy* (1985), 138 Ill. App. 3d 397, 485 N.E.2d 1182). An appropriate fee consists of reasonable charges for reasonable services (*In re Estate of Healy* (1985), 137 Ill. App. 3d

406, 484 N.E.2d 890); however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client (*In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 480 N.E.2d 513), since this type of data, without more, does not provide the court with sufficient information as to their reasonableness—a matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees (*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 480 N.E.2d 513). Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Ealy v. Peddy* (1985), 138 Ill. App. 3d 397, 485 N.E.2d 1182.) Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *Board of Education v. County of Lake* (1987), 156 Ill. App. 3d 1064, 509 N.E.2d 1088.

■■ ■ Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client (*Ashby v. Price* (1983), 112 Ill. App. 3d 114, 445 N.E.2d 438), and whether there is a reasonable connection between the fees and the amount involved in the litigation (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890; *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 429 N.E.2d 594). Finally, the decision of the trial court will not be reversed absent an abuse of discretion. *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 465 N.E.2d 139.

With these principles in mind, we first consider MEPC's contention that contrary to the trial court's determination, there was sufficient unrefuted evidence to support its request for the fees it paid to Hess, Kaplan & McDowell, and that by denying that request in its entirety, the court abrogated the express terms of the lease agreement and abused its discretion. MEPC argues that the uncontroverted affidavit of Peter Hess and the supporting documents attached thereto, together with the court file containing documents and pleadings prepared by Hess, Kaplan & McDowell, sufficiently substantiated the requested fees.

Initially, we note that in accordance with the cases cited above, the existence of a contractual provision obligating one party to pay attorney fees does not relieve the other of its burden to establish the reasonableness of the amount requested. Here the affidavit of Peter Hess consisted of (a) general information concerning the educational backgrounds of the members of the firm; (b) statements that the firm had represented MEPC both prior to and in this litigation, that the hourly rate charged MEPC was the standard hourly rate charged to all its clients and that time, and that the information contained in exhibits A and B was compiled from time records maintained in the ordinary course of business and available for inspection; and (c) his opinion that the $24,047.95 charged to and paid by MEPC was "reasonable" and should be awarded to it.

As to exhibit A, we note that it is nothing more than a compilation of 11 photocopied bills sent to MEPC between October 1982 and July 1984, together with approximately six "daily time reports" consisting of work descriptions such as "Court Appearance," "Review Doc's," "Pleadings," "Status," and the like. As the trial court stated, these documents lacked foundation and were devoid of any meaningful information to assist it in determining the reasonableness of the fees charged; and the mere fact that MEPC paid the bills does not satisfy its burden in that regard. Parenthetically, we think it is noteworthy that on one of the bills is a handwritten notation "breakdown has been requested," which, to us, indicates some dissatisfaction even by MEPC with the adequacy of the information provided.

Similarly, with respect to exhibit B, the summary of charges prepared for purposes of the hearing, we note initially that although Hess stated in the affidavit presented by MEPC that the information therein was compiled from time records maintained in the ordinary course of business, when presented with a subpoena for their production, he gave a second affidavit stating that those records no longer existed.

Secondly, as to the contents of the summary, a review of it first reveals that while Hess stated that his firm "was engaged to represent MEPC in this case in July 1982," the summary includes charges for approximately 9 hours of work at an hourly rate of $135 for services performed between October 1981 and July 1982. Also included in the summary are approximately 13.5 hours followed by the notation "no description" of the services performed. Seven hours were attributed to "file review," four hours to "review of complaint," 15.75 hours to "review" or "document review" and 27.25 hours to "pleadings" or "review of pleadings." "Court appearances," without more,

accounted for 35 hours of charges and 17.75 hours were billed for services described only as "status." "Research" charges totalled 5.5 hours and 5.25 hours were billed for "telephone calls," only 1.5 of which were accompanied by a notation identifying the person with whom the conversation was had. Similarly, "meetings" and "conferences," without further explanation, totalled 5.75 hours and meetings "with Hess," "with plaintiff's attorney," "with defendant's attorney," and "with Kaiser's attorney," accounted for 9.25 hours. Also included in the summary were charges for items listed only as "correspondence," "status letter," "discovery," "review of lease and complaint," and "attorney opinion."

■ The trial court found this list of descriptions to be an inadequate basis on which to predicate a fee award, ruling that without detailed information concerning the nature of and the actual time expended on each of the legal tasks performed, the identity of who performed them, how they related to the litigation and whether they were necessarily required, it was impossible to render a finding that they were reasonable and, therefore, compensable. From our own review of exhibit B, we agree that even those descriptions which were provided are too vague and general to have any practical utility or to satisfy the burden MEPC was required to meet in order to demonstrate its entitlement to compensation from the Kaisers of the charges listed therein (cf. *Board of Education v. County of Lake* (1987), 156 Ill. App. 3d 1064, 509 N.E.2d 1088 (timesheet and summaries containing only general descriptions of work performed are not an adequate substitute for detailed contemporaneous time records)).

Citing *First National Bank v. Edgeworth* (1981), 94 Ill. App. 3d 873, 419 N.E.2d 372, MEPC further argues that the trial court had the entire case file before it and the authority to review that file for the purpose of substantiating that Hess, Kaplan & McDowell performed the services for which it billed MEPC.

While it is true that the trial court has the discretion to consider the contents of the record in determining whether a party is entitled to fees and whether the fees requested are reasonable, we reiterate that the burden is on the party seeking the fees to produce detailed facts and computations upon which the claim for fees is predicated; and we note that *Edgeworth* does not represent an exception to this rule since in that case each of the attorneys petitioning for fees did, in fact, submit itemized statements of services and charges. (See also *Ealy v. Peddy* (1985), 138 Ill. App. 3d 397, 485 N.E.2d 1182.) Here, the trial judge noted that the court files spanned a period of several

years and determined that it was neither appropriate nor judicially feasible for him to conduct the in-depth examination necessary to locate documents and pleadings which might substantiate that certain services referred to in the summary were performed and, moreover, that it would not be a proper exercise of discretion to arbitrarily valuate the services solely on the basis of those documents.

MEPC additionally argues, however, that it provided the trial court with the required evidence in its February 6, 1987, motion to reconsider and vacate the November 5 ruling, attached to which was an appendix in which the charges listed in the summary were matched to pleadings, correspondence and orders contained in the record. It is MEPC's position that the trial court's refusal to consider this evidence or to vacate its previous order disallowing any fees for the services of Hess, Kaplan & McDowell constituted a continuing abuse of its discretion.

■■ ■ It is well settled that the intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing (*In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 467 N.E.2d 962), changes in the law or errors in the court's previous application of existing law (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115). Here, MEPC did not request reconsideration on any of these bases but, rather, on the ground that it had reconstructed the time records of Hess, Kaplan & McDowell *vis-a-vis* the court file in the form of an appendix which it wished to present as evidentiary support for its fee request. The appendix consisted of numerous pages listing services performed by Hess, Kaplan & McDowell and the time expended thereon. The sources cited as support for these entries were either documents in the file which had been prepared by Hess, Kaplan & McDowell or the previously discussed affidavit and supporting exhibits of Peter Hess. As noted earlier, however, in his second affidavit, Hess stated that all of the time records relating to this litigation had been destroyed. Thus, although the court file indicates that Hess, Kaplan & McDowell performed some legal work for MEPC, in the absence of contemporaneous time records we can only conclude that the hours reflected in the appendix appear to be more a product of conjecture by the attorneys preparing it as to the time *probably* expended on a particular service rather than an accurate computation of the time *actually* expended thereon. In view thereof and because the appendix did not contain information which was unknown or unavailable at the time of the earlier hearing, we cannot say that the trial court improperly denied the motion to reconsider.

After rendering its ruling on that portion of the petition concerning the fees of Hess, Kaplan & McDowell, the trial court continued the hearing until December 6 for the purpose of reviewing the evidence presented in support of the request for the fees charged by Freeborn & Peters. On that date, the trial court stated that it had examined the entire summary of charges submitted with the affidavit of Margaret Garvey and remarked that in contrast to that of Hess, Kaplan & McDowell, it was very detailed in its listing of services for which it billed MEPC in connection with this litigation. The court found, however, that it contained, *inter alia,* numerous charges for review, revisions, redrafting and corrections of pleadings and other documents as well as for office memoranda and conferences among the attorney with primary responsibility for the case activity—who was admitted to the bar in 1984 and had joined the firm in September of that year—and four other attorneys (all partners) and three paralegals in the firm. The court stated without a showing of the reasons for the multiple revisions and corrections they were not properly chargeable to the Kaisers and, similarly, that it could not be determined from the summary, nor did it seem tenable, that all of the time billed for conferences was spent on issues directly related to this litigation. Proceeding then through the summary in a line-by-line fashion, the trial court disallowed certain fees it determined were excessive, unnecessary, duplicative or unsubstantiated. The court also found some of the charges for work performed by the paralegals to be either noncompensable or only partially compensable on the ground that several of the tasks performed by them were nonlegal in nature.

■■■ Initially, we note that although time and space considerations prevent us from discussing the trial court's rulings as to the allowance, disallowance or reduction of each of the time entries contained in the 17-page summary, we emphasize that we have thoroughly reviewed both the summary and the record of the hearings thereon. Secondly, it must be noted that while the summary is quite detailed in its itemization of work performed by Freeborn & Peters, it is impossible to determine exactly what amount of time was expended on each task listed because, in most instances, the time for all work performed by an attorney on a given day was aggregated into a single hourly total for that day. Consequently, there is no completely objective manner by which to determine the reasonableness of the charges. Nevertheless, we note that of the total 330 hours listed, it appears that at least 40 hours were billed for review and organization of file documents; that there are approximately 80 entries for office conferences and memoranda, totalling in excess of 70 hours and that,

in addition to the time billed for the drafting of various pleadings and other documents, more than 40 hours were billed for redrafts, revisions and corrections thereof. Because these findings comport with those of the trial court and since it is clear from the report of proceedings that the court conducted a detailed and thoughtful review of the time records, gave careful consideration to the proper factors and standards to be applied in fashioning a fee award and, finally, relied where necessary on its own expertise and experience in determining the reasonableness of the amounts requested, we have no basis or reason to overturn its decision.

■■■ Similarly, we cannot say that the trial court abused its discretion to deny MEPC's request for reimbursement of $639 for computerized legal research charges, $493 for photocopying, $239 for "disbursement administrative fees" or for those amounts listed by Freeborn & Peters for delivery and telephone charges and "docket maintenance fees."

With regard to the computerized research charges, MEPC cites *Bennett v. Central Telephone Co.* (N.D. Ill. 1985), 619 F. Supp. 640, where, in a class action suit, the district court allowed a $570 Lexis charge in addition to the fees charged for the time of the attorney who conducted the research. MEPC points out that, here, the trial court disallowed not only the Lexis charge but also some of the fees for the attorney's research time. We note, however, that if the court determined that portions of the research itself were unnecessary or that the time expended thereon was excessive, it logically follows that the charges for the equipment used to do that research should also not be allowed. Moreover, a comparison of the daily time summary and the statement of costs discloses that there are no entries contained in the time records for any of the five days on which computerized research charges appear in the statement of costs, nor is there any indication of the subject matter of that research, the amount of time spent on it or who performed it. Absent substantiation that this expense was necessarily required by the litigation, we cannot say that it was a reasonable and recoverable cost chargeable to the Kaisers.

As to the remaining items contained in the statement of costs submitted by Freeborn & Peters, we, like the trial court, believe that under the reasoning in *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 465 N.E.2d 139, the "costs" of photocopying, check processing, legal newspaper subscriptions, telephone and delivery services and the like are, more accurately, ordinary "expenses" which are normally included in office overhead and, in turn, encompassed within the hourly attorney fee rate charged by the firm.

We are not persuaded otherwise by the assertion of the attorney from Freeborn & Peters that it is the firm's policy to separately charge for these items according to each client's use rather than raising the hourly rate charged to all clients, as there was nothing presented establishing the existence of such a policy or any showing that its fees were lower than those customarily charged in the community for the same services.

██ We do, however, agree that the amounts paid by MEPC to Hess, Kaplan & McDowell for filing the complaint and serving summons are recoverable costs which, it appears from the transcript of proceedings, were inadvertently overlooked by the court in fixing the final award. Thus, the order should be modified to include an additional $104.20 to be paid by the Kaisers to MEPC.

For the reasons stated, the order of the trial court is affirmed as modified.

Affirmed as modified.

PINCHAM and MANNING, JJ., concur.