2023 IL App (1st) 221946-U

No. 1-22-1946

Order filed November 3, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| SECURITY SOLUTIONS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 08390 |
| | ) | |
| LAMONT ELLEBB, | ) | Honorable |
| | ) | Thomas Donnelly, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justice C.A. Walker concurred in the judgment.
Justice Hyman concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*: Circuit court's entry of a directed finding in defendant's favor affirmed where plaintiff failed to supply this court with a complete record and we must conclude that the circuit court's decision had a sufficient factual basis and that its ruling conforms with the law. We reverse the denial of plaintiff's attorney fee petition and remand for further consideration. We decline to address whether the circuit court should have blue penciled the restrictive covenants contained in the contract as that issue is moot based on our affirmance of the directed finding for defendant.

¶ 2    Plaintiff Security Solutions, Inc. filed a suit alleging breach of contract, tortious interference with contract and unjust enrichment against defendant Lamont Ellebb after defendant opened a competing business. The circuit court entered an order that, among other things, entered a directed finding in defendant's favor on its own motion, but also awarded plaintiff sanctions. The circuit court later denied plaintiff's entire attorney fee petition. On appeal, plaintiff contends that: (1) the circuit court incorrectly directed the "verdict" in defendant's favor; (2) the circuit court improperly denied plaintiff's fee petition after awarding plaintiff sanctions; and (3) the circuit court erred in not "blue penciling" the restrictive covenants contained in the noncompete agreement. For the following reasons, we affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4     This case has a rather lengthy and somewhat confusing procedural history, complicated by the fact that defendant was *pro se* during much of the proceedings and the documents contained in the record appear to be out of order. That aside, briefly stated, the underlying dispute arose after plaintiff accused defendant of violating noncompete and non-solicitation clauses contained in a contract. Plaintiff sells and provides installation for ADT alarm systems. Defendant was a salesperson associated with plaintiff for many years. However, in 2019, defendant allegedly started his own competing ADT business while still working for plaintiff and used customer information gathered from plaintiff in doing so.

¶ 5    Plaintiff filed its initial verified complaint on July 17, 2019, alleging breach of contract, tortious interference with the business relationship, and unjust enrichment. A default judgment was entered against defendant on December 17, 2019, however, Defendant, appearing *pro se*, moved to vacate the default on January 24, 2020, which was granted. Defendant subsequently filed

a *pro se* motion to dismiss the complaint on January 29, 2020, arguing that he agreed to be a consultant for plaintiff, not an agent or employee, and that he never signed the 25-year noncompete agreement. Defendant also indicated that he resigned on or about August 4, 2008, in pursuit of his own ADT security dealership, which is when he learned of the 25-year noncompete clause and was denied ownership. He rejoined plaintiff in 2014 under a new agreement as a consultant after forgiving plaintiff for not dismissing the noncompete agreement. Plaintiff responded to the motion by filing a joint motion to strike defendant's motion to dismiss and for default judgment on February 7, 2020. Defendant subsequently retained counsel, who filed an appearance on February 20, 2020. Plaintiff sought and obtained a partial restraining order against defendant to enjoin him from utilizing plaintiff's customer lists on February 25, 2020. Meanwhile, defendant's verified and amended combined motion to dismiss the complaint was filed on February 27, 2020, which alleged that the complaint was defective on its face and substantially insufficient at law. After several more amended pleadings by both parties, the matter proceeded to a hearing on all open motions on September 25, 2020, via the Zoom videoconferencing software. The circuit court entered its written order on October 1, 2020, which struck plaintiff's breach of contract count with prejudice as to the 25-year noncompete and non-solicitation clause in the agreement, and the remaining claims were stricken without prejudice with leave to replead. Plaintiff's claims for tortious interference with contract and prospective advantage and injunctive relief were stricken without prejudice with leave to replead.

¶ 6        Plaintiff filed its verified amended complaint on October 23, 2020, alleging breach of written contract, tortious interference with contract, breach of oral agreement, unjust enrichment,

and tortious interference with affinity partner contract. Defendant responded with a verified motion to dismiss the amended contract filed on November 20, 2020.

¶ 7    The case was subsequently transferred to the Law Division on February 24. 2022, and the parties began discovery. Meanwhile, defendant's motion to dismiss was set for hearing on July 14, 2022, at which time it was denied and trial was set for September 15, 2022.[1] Plaintiff filed an emergency motion to compel defendant to comply with discovery on August 19, 2022. That motion was granted on August 23, 2022, but the court denied plaintiff's request to strike the trial date. The court also ordered defendant to file an affidavit of completeness within seven days. Subsequently, on September 7, 2022, plaintiff filed an emergency motion for contempt and sanctions against defendant for his failure to comply with any discovery requests. Plaintiff sought sanctions under Supreme Court Rules 219 and 137 (Ill. S. Ct. R. 219 (eff. July 1, 2002); Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)).[2] Meanwhile, defendant's counsel sought to withdraw his representation on September 8, 2022; that motion was later refiled on September 13, 2022, as an emergency joint motion to withdraw as counsel or alternately continue trial. On September 16, 2022, the circuit court entered a written order that provided in pertinent part as follows:

1.  Defendant's counsel's motion to withdraw was denied.

2.  Defendant's motion for continuance was denied.

3.  Plaintiff's motion for sanctions was granted in full and plaintiff was granted 30 days to file its attorney fee petition.

---

[1] The initial order indicated that defendant's motion to dismiss was denied with prejudice but it was corrected to state only that the motion was denied.

[2] Rule 219 allows sanctions for failure to comply with discovery while Rule 137 allows sanctions for filing pleadings not grounded in law or fact or that cause unnecessary delay or needless increase in the cost of litigation.

4. At the conclusion of plaintiff's case, on its own motion, the court entered a directed finding in favor of defendant and entered judgment for defendant.

5. Plaintiff was granted 30 days to file its motion to reconsider.

¶ 8     Plaintiff filed its verified fee petition and verified motion to reconsider on October 17, 2022, and subsequently a verified response in support of its fee petition on December 7, 20222.

¶ 9     The circuit court denied plaintiff's motion to reconsider and plaintiff's fee petition on December 8, 2022. In denying the motion to reconsider, the court stated that the motion failed to explain how the court erred in entering a directed finding for defendant. In denying plaintiff's fee petition, the court stated that the billing invoice failed to specify who performed the services listed and the entries were "too vague and general" to show the services were reasonably necessary for the litigation.

¶ 10    Plaintiff's timely notice of appeal was filed on December 28, 2022.

¶ 11                                II. ANALYSIS

¶ 12     On appeal, plaintiff contends that: (1) the circuit court incorrectly directed the "verdict" in defendant's favor; (2) the circuit court improperly denied plaintiff's fee petition after awarding plaintiff sanctions; and (3) the circuit court erred in not "blue penciling" the restrictive covenants contained in the noncompete agreement. We shall examine each in turn.

¶ 13    However, before we reach the merits of plaintiff's appeal, we must address two preliminary matters.

¶ 14    First, we note that defendant has not filed a brief on appeal. On August 23, 2023, this court entered an order taking the case on the record and the appellant's brief only. A reviewing court is not compelled to serve as an advocate for the appellee and is not required to search the record for

the purpose of sustaining the trial court's judgment. *Benjamin v. McKinnon*, 379 Ill. App. 3d 1013, 1019 (2008). However, if the record is simple and the claimed errors are such that the reviewing court can easily decide them without the aid of an appellee's brief, that court should decide them without the aid of an appellee's brief, that court should decide the merits of the appeal. *Id.* As such, we will therefore consider the appeal on the record and appellant's brief only pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

¶ 15    We also note that the trial and posttrial proceedings were conducted via the Zoom videoconferencing software. There is no report of proceedings for any of the circuit court proceedings in the record on appeal. Plaintiff has failed to provide either a report of proceedings or  certified bystander's report for the trial or posttrial proceedings. Supreme Court Rules 321 and 324 require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. Ill. S. Ct. R. 321 (eff. Oct. 1, 2021); Ill. S. Ct. R. 324 (eff. July 1, 2017). If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts as provided in Rule 323. Ill. S. Ct. R. 323 (eff. July 1, 2017). The burden of providing a sufficient record on appeal rests with the appellant, which in this case is the plaintiff. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-82 (1984). In the absence of such a record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id*. at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.*

¶ 16    "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral v. Mervis*

*Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). The inadequacy of the record makes meaningful review of the appellant's arguments impossible and requires that the judgment of the trial court be affirmed. *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 92 (1994).

¶ 17    With these principles in mind, we discuss each of plaintiff's contentions below.

¶ 18                              A. Circuit Court's *Sua Sponte* Directed Finding

¶ 19    Plaintiff first contends that the circuit court erred in directing the "verdict" in favor of defendant. According to plaintiff, at the conclusion of its case-in-chief, which included testimony from Blessen and numerous exhibits submitted, the circuit court entered a directed finding in favor of defendant on its own motion. Plaintiff argues that the circuit court erroneously disregarded the weight of the evidence supporting each of its claims and moreover, because defendant was barred from presenting evidence or even asserting a defense,[3] the verdict should have been entered in plaintiff's favor. Plaintiff contends that it provided testimony and submitted evidence to establish its *prima facie* case for each of its claims: breach of contract, tortious interference, breach of oral contract, and unjust enrichment. Plaintiff also maintains that the record does not indicate the basis for the circuit court's order directing the verdict, namely, whether it was based on a finding that plaintiff failed to present a *prima facie* case or whether the finding was based on the manifest weight of the evidence. As such, plaintiff argues that the verdict should be reversed.

¶ 20    As noted above, defendant did not make a motion for judgment at the close of plaintiff's case; rather, the order entered by the circuit court indicated that a directed finding was entered on

---

[3] As noted above, defendant was barred from presenting evidence at trial or asserting a defense as a sanction for lying in his affidavit and withholding documents.

the court's own motion. Plaintiff refers to the circuit court's order as a "directed verdict", however, there are major differences between the two. A directed verdict, which applies in a jury trial, and is governed by the standard set forth by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967); specifically, the court views the evidence in the aspect most favorable to the opponent. In contrast, a directed finding is based on a motion for judgment and applies in civil, nonjury cases where the trial court acts as the factfinder and weighs the evidence, and is governed by section 2-1110 of the Code of Civil Procedure (Code) (735 ILS 5/2-1110 (West 2022)). Section 2-1110 provides that, "[i]n all cases tried without a jury, the defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor." *Id.* In ruling on the motion, the court does not view the evidence most favorably to the plaintiff, but rather engages in a two-step analysis. *Edward Atkins, M.D. S.C. v. Robbins, Salomon & Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 53. First, it must determine whether the plaintiff has presented a *prima facie* case as a matter of law by producing some evidence on every element necessary to its cause of action. *Id.* If the plaintiff failed to do so, the court should grant the motion and enter judgment in favor of the defendant. *Id.* If the plaintiff has presented a *prima facie* case, the circuit court must then consider the totality of the evidence presented, by weighing it, determining the credibility of witnesses, and drawing any reasonable inferences, and ultimately conclude whether the plaintiff's *prima facie* case survives. *Id.* ¶ 54. If sufficient evidence exists to establish the plaintiff's *prima facie* case, the court should deny the defendant's motion and continue the trial. *Id.* If sufficient evidence does not exist, the court should grant the motion and enter judgment in favor of the defendant. *Id.* Generally, if the court grants the motion at the first step of the section 2-1110 analysis, our standard of review is *de novo*, whereas if the court grants the motion at the second step, our standard of review is the manifest-weight standard. *Id.* This case was a civil bench trial,

thus the circuit court's entry of judgment in favor of defendant was a directed finding under section 2-1110 and not a directed verdict.

¶ 21     In this case, the order entered by the circuit court does not explain its reasons for its ruling, namely whether it entered a directed finding at the first or second step of the section 2-1110 analysis. The order merely states that the cause was heard for trial and the court being fully advised in the premises, and among other things, entered a directed finding for defendant on its own motion. According to plaintiff's brief, testimony was presented at trial along with numerous exhibits. This leads us to infer that the court's ruling was based on the second step of a 2-1110 motion: that plaintiff failed to carry its burden of proof. Thus, we review using the manifest weight of evidence standard.

¶ 22     We disagree with plaintiff's contention that the circuit court's order must be reversed simply because it presented testimony and evidence at trial and defendant did not: as he was barred from presenting evidence as a sanction. Presumptions of the circuit court's correctness is especially strong where, as here, the written order indicated that the court was "fully advised in the premises." *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 6. Such language raises the presumption that the judgment is supported by the evidence in absence of any contrary indication in the order or record. *Boysen v. Antioch Sheet Metal, Inc.*, 16 Ill. App. 3d 331, 333 (1974); *Mars v. Priester*, 205 Ill. App. 3d 1060, 1066 (1990).  Even if the circuit court's ruling was based on the first step and our review was *de novo*, we would still find that the court's ruling must stand. A court's factual findings and its basis for its legal conclusions cannot be reviewed absent a report or record of the proceeding. *Corral*, 217 Ill. 2d at 156. No such record was presented here. Without an adequate record, the reviewing court must presume that the lower court had a sufficient factual basis for its

holding and that its ruling conforms with the law. *Id*. at 157. We therefore have no choice but to uphold the circuit court's ruling entering a directed finding for defendant despite plaintiff's arguments to the contrary.

¶ 23                    B. Denial of Plaintiff's Attorney Fee Petition After Sanctions Award

¶ 24    Plaintiff next contends that the circuit court erred in denying its entire attorney fee petition after granting its motion for sanctions against defendant. According to plaintiff, the circuit court granted its motion for sanctions as part of the September 16, 2022, order and ordered its attorneys to file a fee petition. Plaintiff's attorneys filed a verified fee petition that was supported by affidavits; however, the circuit court subsequently denied the fee petition on December 8, 2022, without a hearing.

¶ 25    A petition for fees must present the court with detailed records containing facts and computations upon which the charges are predicated specifying the services provided, by whom they were performed, the time expended and the hourly rate charged. *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 69. The party seeking fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 66 (2009). An appropriate fee consists of reasonable charges for reasonable services; however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client, since this type of data, without more, does not provide the court with sufficient information as to their reasonableness- a matter which cannot be determined on the basis of conjecture or on the opinion or conclusion of the attorney seeking the fees. *Id.* Because of the importance of these factors, it is incumbent on the

- 10 -

movant to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *Id.*

¶ 26    Once presented with those facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation. *Id.* 66-67. The trial court has broad discretion in awarding attorney fees, and a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *O'Malley*, 2022 IL App (1st) 200007, ¶ 69.

¶ 27    Here, the circuit court's written order that denied plaintiff's attorney fee petition, finding that it failed to specify who performed the services listed and further that the entries were "too vague and general" to show that the services were reasonably necessary for the litigation.

¶ 28    On review of the verified attorney fee petition, we note that it introduced the two attorneys who worked on plaintiff's case (Sean Patrick and Aaron Rifkind), listed their skill and standing and their individual degrees of responsibility for plaintiff's case. The petition detailed the nature and difficulty of the case, and set forth the usual and customary fee in the community, which was $350 per hour through December 31, 2021, and $400 per hour since January 1, 2022, for both attorneys. Previously approved fee petitions were attached to demonstrate the reasonableness of the hourly rate. Also included was a staff member's time, which was billed at a lower rate of $150 per hour. The petition further detailed the time and labor required in litigating plaintiff's case, which occurred between 2019 and 2022. Attached to the petition were affidavits from the two

attorneys and what appears to be printouts from time management software, PracticePanther, which details client records for Brett Blesson. Those printouts describe the work that occurred for the client file and the hourly rate ($350, $400, or $150) which corresponds to the information contained in the petition. Per the printouts, the total fees amounted to more than $48,000 and plaintiff's attorneys sought $30,952.50.

¶ 29    After review of plaintiff's attorneys' fee petition and supporting documentation, we find that the circuit court abused its discretion in denying the entire fee petition because it was "vague." The fee petition clearly set forth who performed the services and their corresponding hourly rate and the printouts from the case management software clearly showed the services performed, the time expended, the hourly rate and the totals for all time spent, from 2019 through 2022, therefore it was not vague. Based on the record before us, it was an abuse of discretion to summarily deny the fee petition without any consideration of the reasonableness of the fees or any of the other factors detailed above used to determine whether a fee petition should be granted. Accordingly, we reverse the summary denial of plaintiff's attorney fee petition and remand to the circuit court for further consideration.

¶ 30                    C. "Blue Penciling" Restrictive Covenants

¶ 31    Lastly, plaintiff contends that the circuit court erred in not "blue penciling"[4] the restrictive covenants contained in the noncompete and solicitation provisions of the contract instead of striking them with prejudice. In doing so, plaintiff concedes that the 25-year restriction in both provisions was unenforceable as written, but argues that it requested that the circuit court blue

---

[4] "Blue penciling" is a court's discretionary modification of a restrictive covenant. See *Arcor, Inc. v. Haas*, 363 Ill. App. 3d 396, 406 (2005).

pencil those contract provisions, which were necessary to protect its confidential information and customer relationships.

¶ 32    We decline to address this issue as it is moot. An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening circumstances have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 27. Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *Id.* That is precisely the situation here. We have already affirmed the circuit court's grant of a directed finding in defendant's favor because we were unable to review that decision due to the incompleteness of the record. As such, the issue of whether the circuit court should have blue penciled the restrictive covenants contained in the contract is moot because resolution of that issue will not change the directed finding in defendant's favor. Accordingly, we find this issue is moot and we will not address it.

¶ 33                                    III. CONCLUSION

¶ 34    In conclusion, we affirm the circuit court's entry of a directed finding in defendant's favor where, due to plaintiff's failure to supply this court with a complete record which does not allow for a meaningful review of the circuit court's decision, we must conclude that the circuit court's decision had a sufficient factual basis and that its ruling conforms with the law. We reverse the denial of plaintiff's attorney fee petition and remand for further consideration. Finally, we decline to address whether the circuit court should have blue penciled the restrictive covenants contained in the contract as that issue is moot based on our affirmance of the directed finding for defendant.

¶ 35    Affirmed in part; reversed in part; remanded with directions.

¶ 36    JUSTICE HYMAN concurring in part, dissenting in part:

¶ 37    I agree with affirming the trial court's entry of a directed finding for Ellebb and finding "blue penciling" the restrictive covenant as a moot issue. But I part with the majority on reversing the order denying the attorneys' fees petition and remanding for further consideration. The billing records and affidavits submitted by Security Solutions' attorneys fall far short of the requisite detail demanded by Illinois supreme and appellate court case law. I would find the trial court did not abuse its discretion in denying the petition.

¶ 38    As the majority notes, a trial court has broad discretion in awarding attorney's fees, and a reviewing court will not reverse absent an abuse of discretion. *O'Malley v. Udo*, 2022 IL App. (1st) 200007, ¶ 69. See also *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999) (trial judge has broad discretion regarding attorney's fees due to advantage of close observation of attorneys' work and deeper understanding of skill and time necessary to litigate case).

¶ 39    The party seeking the attorney's fees bears the burden of presenting sufficient evidence on which the trial court can determine their reasonableness. *Gambino v. Boulevard Mortgage Corp*., 398 Ill. App. 3d 21, 66 (2009). A petition for fees must specify (i) the services performed, (ii) who performed them, (iii) the time expended, and (iv) the hourly rate charged. *Kaiser v. MEPC American Properties, Inc*., 164 Ill. App. 3d 978, 984 (1987). The petition must include all these essential elements for the trial court to award attorney's fees. "[I]t is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Gambino*, 398 Ill. App. 3d at 66. Whether

fees are reasonable and necessary presents a question of fact. *In re Estate of Healy*, 137 Ill. App. 3d 406, 411 (1985).

¶ 40    In denying the fee petition, the trial court found "[Security System's] billing invoice fails to specify who performed the services listed" and "the entries are 'too vague and general' to show the services were reasonably necessary for the litigation." In asking us to reverse that order, Security Solutions' attorneys assert (i) their affidavits averred that the work was done by two attorneys—Aaron Rifkin and Sean Patrick, (ii) the petition described how Rifkin and Patrick divided the work, and (iii) the billing records provide a detailed entry, including exact time expended and dollar amounts. Presumably, the attorneys contend that together, the affidavits and billing records offer enough detail to assess reasonableness. I have to disagree.

¶ 41    The fee petition generally describes each attorneys' responsibilities in the litigation, with Patrick serving as the "primary attorney working on the matter from the initial filing through trial" and "Rifkind assist[ing] in trial preparation, motions, pleadings, and court appearances." Similarly, the affidavits generally describe their qualifications and aver that hourly rates depend on years of experience and the case's complexity. Neither document recites the tasks and the identity of the attorney (or paralegal) who did the work.

¶ 42    Turning to the billing records, the attorneys do not dispute that they failed to indicate which attorney performed which service. Instead, they contend the trial court misapplied *Kaiser* and other cases by requiring the billing records to include that level of detail. Not so. Indeed, *Kaiser*, *Gambino*, and a slew of decisions say the opposite and insist on the specificity lacking here. *Kaiser*, 164 Ill. App. 3d at 984. For example, multiple billing entries refer to "discovery," "document review," and "research," which provide no meaningful basis to determine reasonableness.

¶ 43    Faced with these generic, amorphous descriptions and nothing identifying who performed the work, the trial judge appropriately used his broad discretion to deny the fee petition.

¶ 44    Perhaps more significantly, why were Security Solutions' attorneys entitled to seek more than $30,000 in attorney's fees dating back to July 2019? While the discovery sanctions were imposed after Ellebb failed to produce documents in response to a court order dated August 23, 2022, from the record, I cannot discern the nature and scope of the sanctions.

¶ 45    Before the trial court, Security Solutions asserted discovery began on February 24, 2020, when Security Solution's presented a motion for a preliminary injunction, asking the trial court to order Ellebb to destroy and return confidential information, including leads, contact lists, referral lists, customer lists, price lists, and other confidential information or trade secrets. A preliminary injunction seeking the return of documents is not a discovery request. Nonetheless, Security Solutions did send discovery requests to Ellebb a few months later, billing their client $300 on April 21, 2020, for "Draft[ing] written discovery requests to be sent to defendant." Security Solutions' attorneys acknowledge they did not send another discovery request until almost two years later, on April 6, 2022. But they assert Security Solutions is entitled to reasonable attorney's fees for its discovery efforts, including subpoenas to third parties for defendant's documents, search and review of social media pages Ellebb refused to submit, projections of revenue Ellebb should have turned over in discovery, and other matters. That may be true, but the billing records do not support it. The billing records fail to provide the required detail of the work done to obtain Ellebb's compliance with its discovery requests from April 21, 2020, through April 6, 2022. The following relevant entries appear to be a $600 charge on September 6, 2022, for "finalizing motion for sanctions" and a $600 charge the next day for "filing the emergency motion." (Interestingly,

the attorneys billed for "work on motion for sanctions" on January 29, 2020, even though the motion was filed two years later.) Thus, the trial court had no basis for assessing whether any amount of fees was reasonable.

¶ 46    Security Solutions' attorneys assert, however, that in addition to discovery sanctions under Illinois Supreme Court Rule 219(c) (eff. Jul 1, 2002), they requested sanctions against Ellebb under Illinois Supreme Court Rule 137(b) (eff. Jan. 1, 2018) for signing a false affidavit of completeness. Rule 137 does not limit the available sanctions rather it "[i]t allows for 'an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee.' " *Stiffle v. Baker Epstein Marz*, 2016 IL App (1st) 150180, ¶ 56 (Emphases omitted.) Security Solution's attorneys correctly note that Rule 137 gives a trial court broad discretion in imposing an appropriate sanction (*Bachmann v. Kent*, 293 Ill. App. 3d 1078, 1086 (1997)), but still their petition cannot support a fee request, considering that they have asked for over $30,000 for Ellebb's filing a false affidavit of completeness on August 31, 2022, more than two years after the litigation began.

¶ 47    The trial court order granting the motion for sanctions, which Security Solutions' attorneys drafted, states, "Plaintiff's Motion for Sanctions is granted in full," and gives the attorneys 30 days to file a petition for fees. Like the emergency motion, this order does not mention what the sanctions were for, the period involved, or the type of work for which the attorneys could seek reimbursement. Then, in their fee petition and affidavits, the attorneys ask for almost $31,000 in attorney's fees they billed their client for discovery matters dating back to July 2019 without explaining why. Moreover, the attorneys cut the billing statement from nearly $49,000 to about

$31,000, again, without explaining how they arrived at the lower figure or indicating which entries were excluded and which were included.

¶ 48    Besides failing to provide sufficient detailed billing records to support a finding of reasonableness, Security Solutions' attorneys also do not explain what the sanctions were for, the period covered, and the legal work for which reimbursement could be sought. A remand serves no useful purpose in light of the sloppy, incomplete, and incongruent billing records, except to give the attorneys an opportunity to put fresh paint on a dirty surface.

¶ 49    I submit this court is constrained to find that the trial court abused its discretion in denying the fee petition and would affirm the denial of the fees petition.