**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250147-U

Order filed January 29, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| AMY L. MASLIN, n/k/a | ) | Will County, Illinois, |
| AMY L. BENINCASA | ) | |
| | ) | Appeal No. 3-25-0147 |
| Petitioner-Appellee, | ) | Circuit No. 2017 D 992 |
| | ) | |
| and | ) | Honorable |
| | ) | David Garcia, |
| AARON J. MASLIN, | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court abused its discretion when declining to conduct an examination of billing records accompanying a petition for attorney fees presented pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act.

¶ 2     Respondent, Aaron J. Maslin, appeals the Will County circuit court's judgment for $37,318.14 in attorney fees awarded to petitioner, Amy L. Benincasa, for her petition for attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS

5/508(b) (West 2024). Aaron argues that the court erred in declining to undertake an examination of the billing records accompanying the fee petition to determine whether they represented fees properly awarded pursuant to that statute. We conclude that the court did decline to undertake that examination and that failure constitutes an abuse of discretion. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4        This is a post-judgment matter concerning the award of attorney fees under section 508(b) of the Act on the basis of two orders finding Aaron in indirect civil contempt relative to income tax liability, child support and restrictions on children's activity issues, as well as his litigation of parenting issues which Amy asserts was precipitated or conducted for the improper purposes of harassment, unnecessary delay, or needlessly increased the cost of litigation. 750 ILCS 5/508(b) (West 2024). While the parties have participated in protracted litigation regarding the allocation of decision-making authority and parenting time, we refer to those issues only where necessary to address the rather narrow issue before us.

¶ 5        The parties have a minor daughter (J.M.) and minor son (A.M.). A judgment for dissolution of marriage incorporating the parties' marital settlement agreement and allocation judgment was entered on April 9, 2019. The judgment, in that part relevant to indirect civil contempt, required that Aaron and Amy each contribute a maximum of $320 monthly towards the children's extracurricular activities. It also provided the following regarding their 2015 federal income tax liability:

> "Both parties will be equally responsible for the payment of any balance, determined to be owed, to the IRS because of the issue with their 2015 tax return. Both parties shall cooperate with the tax accountant currently working on this IRS problem in order to have this resolved as quickly as possible."

¶ 6     The parties have been engaged in incessant litigation concerning parenting issues since the judgment entered. The attorney fee award under consideration now includes fees alleged to have been incurred following a finding of indirect civil contempt for Aaron's failure to pay his share of extracurricular expenses and the tax debt, those associated with an emergency motion filed by Aaron that the court found to be frivolous, and a November 18, 2022, contempt finding for allowing one of the children to engage in motorsports. Aside from those fees associated with contempt findings, the award also included all fees alleged to have been incurred by Amy in the pursuit of several pleadings dating from October 2022, concerning parental responsibilities and parenting time.

¶ 7     On November 18, 2022, the court found Aaron in indirect civil contempt for allowing A.M. to participate in motorsports in violation of a prior court order. The contempt order granted Amy's counsel leave to file her petition for attorney fees and costs pursuant to section 508(b) of the Act. Amy did not file a petition until December 10, 2024.

¶ 8     On March 23, 2023, Aaron filed an emergency motion seeking a temporary restraining order to prohibit Amy's attorney from having direct contact with the children's medical and mental health professionals, to prohibit Amy from calling him a criminal or discussing his criminal past with the children, to restore parenting time with A.M., to require that the children see a different therapist, and to access the children's medical and mental health information. The circuit court determined that the pleading did not present an emergency and ordered that Aaron pay Amy's attorney fees for that day's court appearance as a sanction.

¶ 9     On November 3, 2023, Amy filed a motion to set child support, petition for rule to show cause, and other relief. Specifically, Amy sought a recalculation of child support based upon a reduction in parenting time enjoyed by Aaron since the judgment, to be awarded all tax exemptions

and benefits for both children, and an order finding Aaron in contempt for his failure to contribute to extracurricular expenses and timely pay his share of the 2015 tax obligation. Later, on May 6, 2024, Amy filed an amended motion to modify parenting time to restrict or suspend Aaron's parenting time with A.M., or to modify it to be consistent with the lesser parenting time allowed for J.M. On July 9, 2024, Amy filed a motion to compel and for sanctions related to the alleged failure to comply with a request for production.

¶ 10     Through the pendency of this litigation, Amy filed two emergency motions to modify parenting time. The first, filed on September 14, 2023, alleged that Aaron had consumed alcohol while driving with the children. On September 19, 2023, the court suspended Aaron's visitation until he obtained a Soberlink device, which he was ordered to use three times a day. The court terminated this condition on November 7, 2023. Amy's second emergency motion, filed on March 19, 2024, alleged that Aaron's drinking had continued and included documentation that tended to demonstrate daily alcohol consumption over a two-year period. The court reinstated the required use of a Soberlink device during Aaron's parenting time.

¶ 11     On August 1, 2024, a hearing commenced on Amy's motion to set child support and petition for rule to show cause, her amended motion to modify parenting time, and Aaron's motion to modify parenting time and activity restriction. Testimony was taken but not completed over several days with the hearing scheduled to resume on September 24, 2024.

¶ 12     Aaron's counsel filed a motion to withdraw on September 23, 2024, which was granted over Amy's objection on September 24, 2024. The court continued the matter for the appearance of substitute counsel. Aaron, as a self-represented litigant, and Amy resolved the pending parenting issues framed by the pleadings through an agreed order entered on October 8, 2024. On October 10, 2024, the court entered an order finding Aaron in indirect civil contempt for his failure to pay

4

extracurricular expenses in the sum of $1,365.25 and a tax payment equalization sum of $1,804.11. The order allowed him to purge his contempt by paying Amy those sums by December 11, 2024. It further granted Amy leave to file a fee petition without setting a deadline for the filing and set the hearing on fees for that same date.

¶ 13        Amy sent Aaron an itemized bill indicating the attorney fees she intended to request on the morning of December 10, 2024—two months after being granted leave to do so. The fee petition itself was not filed and forwarded to Aaron until 4:23 p.m. on that date. The parties appeared the following day for status on Aaron's purge and hearing on the fee petition. The court found Aaron had not purged himself, remanded him to the custody of the sheriff, and continued the hearing on Amy's petition for attorney fees for two days later. Aaron appeared at the fee hearing while still in custody. The court conducted the hearing and entered a judgment for fees in Amy's favor in the sum of $37,318.14, representing 100% of the fees prayed for.

¶ 14        Aaron subsequently hired counsel who filed a motion for rehearing and reconsideration on January 13, 2025. The motion complained that Aaron, who was in custody on December 11, 2024, and did not receive the fee petition until the afternoon before, was deprived of the opportunity to review his own records and mount a defense. It further asserted that numerous billing entries were neither reasonable nor necessary to resolve issues that could subject Aaron to liability for fees under section 508(b) of the Act.

¶ 15        A hearing was conducted on the motion on February 18, 2025. In response to Aaron's assertion that he was unable to prepare for the hearing, the court suggested that he was given ample opportunity to obtain counsel and request a continuance on the hearing date, as well as object to the fees. The report of proceedings of December 15, 2024, does not contain any reference to substitute counsel or a continuance. It does indicate that Aaron attempted to argue that the fees

5

related to the alcohol allegations at the root of the parenting issues dispute were not related to any contempt finding. The court responded, "But actually we're not retrying, you know, the underlying case. This is about 508(b) fees for being found in contempt." It further stated:

> "Let the record show that [Aaron] is just more attacking [Amy's counsel] than actually talking about the fees. These are 508(b) fees. He was found in contempt. The Court itself doesn't have to – I mean, the Court has to go by the law, and the law says they're mandatory, so I'm going to order those fees to be paid."

¶ 16　　In response to Aaron's suggestion that the charges awarded by the court contained numerous entries that should not be awarded under a section 508(b) petition, the court stated, "I don't want to hear that. I looked at the billing statement. It is not my job to do his job. It is not my job to look at every single billing statement and say hey, this is not right or that is not right. That is his job to do. I don't want to hear that again."

¶ 17　　The court denied Aaron's motion to reconsider and for rehearing. Aaron timely appealed.

¶ 18　　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　Amy first asserts that Aaron's brief lacks citation to authorities and page references relied upon as required by Illinois Supreme Court Rule 341(h)(7). Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The rule provides that the argument section of the brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and pages of the record relied on." *Id.* Amy does not ask that we strike Aaron's brief in its entirety but suggests that we not consider any alleged unsupported argument.

¶ 20　　Striking an appellate brief for a procedural rule violation is a " 'harsh sanction' " that is only appropriate when the violation interferes with or precludes our review. *In re Detention of Powell,* 217 Ill. 2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031,

1035 (2000)). Aaron's brief does lack pinpoint citations; however, it does identify *In re Marriage of Jordan & Spratt,* 2021 IL App (1st) 200969-U, which he analogizes to the case at bar and presents as persuasive authority as allowed by Rule 23(e)(1). Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025). Thus, we find that Aaron's brief substantially complies with Rule 341(h)(7), and any purported deficiencies do not hinder or preclude or review. See *Powell*, 217 Ill. 2d at 132. We will therefore consider the merits of this appeal.

¶ 21        This appeal requires a determination whether fees were appropriately awarded under section 508(b) of the Act. 750 ILCS 5/508(b) (West 2024). The statute provides that fees "shall" be awarded:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification *** If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." *Id.*

¶ 22        Thus, where a party's failure to comply with an order of court is without justification, an award of reasonable attorney fees is mandatory. *Id.*; *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 481 (1999). Fees are also mandatory upon a finding that a hearing was conducted for an improper purpose. 750 ILCS 5/508(b) (West 2024); *In re Marriage of Mouschovias*, 359 Ill. App. 3d 348, 357-58. The only discretion bestowed upon the trial court is whether the fees sought are reasonable. *In re Marriage of Aleshire*, 273 Ill. App. 3d 81, 83 (1995). An attorney presenting a fee petition has the burden of establishing the reasonable value of her services.

7

*Estate of Callahan*, 144 Ill. 2d 32, 43 (1991). Only those fees which are reasonable should be awarded. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987).

¶ 23　　　　When submitting a petition for fees, the movant may not simply submit a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client. Without more, the petition would fail to provide the court with sufficient information as to reasonableness given that the amount awarded cannot be determined on the basis of opinion or conclusions of the attorney seeking the fees. *Id.* at 984. Rather, a fee petition must identify "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged." *Id.* Because these factors are critical, the movant must "present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Id.* Once presented with this information, the court should then review other relevant considerations such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there exists a reasonable connection between the fees and the amount involved in the litigation. *Id.*; *Callahan*, 144 Ill. 2d at 44. The court should also use its own knowledge and experience in determining whether a fee is reasonable. *Richardson v. Haddon*, 375 Ill. App. 3d 312, 315 (2007).

¶ 24　　　　A court's determination concerning the award of attorney fees under section 508(b) will not be disturbed absent an abuse of discretion. *McGuire,* 305 Ill. App. 2d at 478. An abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

8

¶ 25    The court here, while indicating it "looked" at Amy's bill, specifically declined to examine its entries for their relationship to activity which might properly be awarded, the hours expended, reasonableness of hourly rate, or any other factors that must be considered in determining the reasonableness of the fees sought. In fact, the court stated, "It is not my job to look at every single billing statement and say hey, this is not right or that is not right. That is his job to do."

¶ 26    It is axiomatic that a court must first exercise its discretion in a reasonable manner to survive review under the abuse of discretion standard. The failure to exercise discretion when the law requires that it be exercised is itself an abuse of discretion. *Miller v. Lake Car Sales, Inc.*, 2026 IL App (2d) 250116, ¶¶ 9, 12 (vacating fee award where trial court precluded prevailing plaintiff from filing a fee petition and set fees at an arbitrary amount without consideration of any proper factors).

> " 'It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination.' [Citation.] While the explanation need not be painstaking, 'the order awarding fees, read against the backdrop of the record as a whole, must expose the court's thought process and show the method and manner underlying its decisional calculus.' [Citation.] " *Robinson v. Point One Toyota,* 2017 IL App (1st) 152114, ¶ 25.

The court in this case made no such findings of record. While we recognize that the written order provides more specificity here, we cannot find that it was consistent with the court's oral findings. Where a written order conflicts with the oral pronouncements of the court, the latter must control. *Danada Square, L.L.C. v. KFC National Management Co.,* 392 Ill. App. 3d 598, 607 (2009) (oral determination that judgment entered after stipulated bench trial following denial of defendant's cross-motion for summary judgment controls over erroneous written order). The written order in

9

this case suggests the court engaged in the exercise of discretion and considered some of the appropriate factors when it did not, and in fact, specifically declined to do so.

¶ 27    This matter must be remanded for the proper determination of fees. On remand the circuit court should consider the appropriate factors under the case law and determine which fees were reasonably and necessarily incurred as a result of the rather straightforward contempt proceedings, as distinguished from those which might be awarded for any hearing it might determine was precipitated or conducted for an improper purpose. It should then consider whether any basis exists under the statute other than contempt for the imposition of fees and, if so, determine what fees were necessary and reasonable in connection with any improper conduct.

¶ 28    Finally, while not specifically utilizing the term "due process," Aaron asserts he was denied a fair hearing when Amy's fee petition was not filed until the day before the scheduled hearing and the court set the hearing on fees two days later when Aaron was in custody on a contempt finding while appearing as a self-represented litigant. We decline to address this issue as we are reversing on other grounds.

¶ 29                                    III. CONCLUSION

¶ 30    The judgment of the circuit court of Will County awarding attorney fees is reversed. This matter is remanded for further proceedings consistent herewith.

¶ 31    Reversed and remanded.